IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ATANACIO G. SAMBRANO,           )
                                )
           Plaintiff,           )
                                )
    v.                          )    No. 09 C 6363
                                )
RAY MABUS, Secretary, Department)
of the Navy,                    )
                                )
           Defendant.           )

## MEMORANDUM OPINION AND ORDER

Atanacio Sambrano ("Sambrano") has sued Secretary of the Department of the Navy Ray Mabus ("Mabus"), charging the Navy with discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII," 42 U.S.C. §§2000e to 2000e-17) and the Age Discrimination in Employment Act of 1967 ("ADEA," 42 U.S.C. §§621 to 624). Mabus has moved for summary judgment under Fed. R. Civ. P. ("Rule") 56, and the motion has been fully briefed. For the reasons stated here, the motion is granted and this action is dismissed with prejudice.

**Summary Judgment Standard**

Every Rule 56 movant bears the burden of establishing[1] the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts

---

[1] At the summary judgment stage, of course, Sambrano need not "establish" or "show" or "prove" anything, but must show only that a genuine issue of material fact exists. This opinion employs those terms, however, because the cited cases use that terminology, but it imposes on Sambrano the lesser burden described earlier in this footnote.

consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (<u>Lesch v. Crown Cork & Seal Co.</u>, 282 F.3d 467, 471 (7th Cir. 2002)). But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists (<u>Wheeler v. Lawson</u>, 539 F.3d 629, 634 (7th Cir. 2008)) and "must come forward with specific facts demonstrating that there is a genuine issue for trial" (<u>id</u>.). Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).

What follows then is a summary of the facts as tendered in accordance with the strictures of this District Court's LR 56.1, adopted to implement Rule 56.[2] Although as stated earlier the facts must be viewed in the light most favorable to nonmovant Sambrano, that requirement is applied within any limitations created by the extent of his compliance (or noncompliance) with LR 56.1.[3]

---

[2] LR 56.1 requires parties to submit evidentiary statements and responses to such statements to highlight which facts are disputed and which facts are agreed upon. This opinion cites to Mabus' LR 56.1 statement as "M. St. ¶ --" and to Sambrano's responsive filing as "S. St. ¶ --." Where Sambrano does not dispute Mabus' original statement, this opinion cites only that original statement.

[3] In that respect Sambrano has regrettably flouted the LR 56.1 requirements. To begin with, his LR 56.1 statement eschews the required paragraph-by-paragraph response format in favor of a

**Factual Background**

Sambrano is a 66-year-old Asian man employed as a civil engineer at the Naval Facilities Engineering Command Midwest ("NAVFAC-Midwest") in Great Lakes, Illinois (M. St. ¶¶1,8). With the exception of an absence to work in Africa between 1984 and 1995, Sambrano was employed as a GS-11 civil engineer at NAVFAC-Midwest continuously from 1980 until his position description was converted to a GS-12 position in 2010 (id. ¶¶2-5, 68). Sambrano had previously filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in 2000 (id. ¶51).

In October 2005 the Navy announced a GS-12 civil engineer vacancy, and Sambrano applied for it (M. St. ¶9). Lori Pye ("Pye") was designated as the selecting official for the position for administrative reasons (id. ¶10), while Francine Gomes ("Gomes") was delegated the task of making the actual selection

---

structure in which he addresses groups of Mabus' statements in each paragraph. What is more troubling, however, is that Sambrano's LR 56.1 statement is riddled with legal conclusions rather than setting out many factual assertions that he presents for the first time in his memorandum of law without citation to his LR 56.1 statement and, worse yet, often without citation to the record at all. District courts are entitled to require strict adherence to LR 56.1--they may actually disregard references to depositions and other discovery materials that appear only in the supporting briefs and decide the motion based on the factual record outlined in the LR 56.1 statements (Koszola v. Bd. of Educ., 385 F.3d 1104, 1109 (7th Cir. 2004) and cases cited there). Such stringency is unnecessary here, however, for even when Sambrano's claims are considered in light of all admissible evidence he has tendered, he does not survive Mabus' motion.

(id.) Eight candidates applied for the position, and four of them (including Sambrano) were found to merit interviews (M. St. ¶¶14, 17). Ratings by one of the interviewers were disregarded by the interviewing board because that interviewer was unable to participate in one of the interviews (id. ¶19).

Despite receiving the second highest (rather than the highest) raw score after the review of applications and interviews, Sambrano was recommended by the board for the position on December 12, 2005 (M. St. ¶¶20-21). After considering the board's recommendation, the selection process and the Base Realignment and Closure ("BRAC") process, Gomes made an initial decision to cancel the position (id. ¶¶24-25).

On February 14, 2006 the Commanding Officer, Captain Hugh Hemstreet ("Hemstreet"), sent a letter to all of the NAVFAC-Midwest employees stating that as a result of the BRAC process the Southern Division ("SOUTHDIV") was being closed and partially realigned with NAVFAC-Midwest (M. St. ¶26). After receiving that information and consulting with Executive Officer Antonio Edmund, Christopher Jennison ("Jennison") and Pye, Gomes made the final decision to cancel the position (id. ¶¶30-32). On February 22, 2006 Gomes informed Sambrano of the cancellation of the position (id. ¶41).

On March 15, 2006 Sambrano filed a Charge of Discrimination with EEOC (M. St. ¶45). On July 8, 2009 EEOC issued a right-to-

4

sue letter to Sambrano (id. ¶48).

**Employment Discrimination under Title VII and ADEA**

To survive a summary judgment motion, Sambrano must establish a genuine issue of material fact as to whether Navy engaged in intentional discrimination. Two approaches are available to that end: (1) the direct approach, where a plaintiff adduces direct evidence of the employer's discriminatory intent or creates a "convincing mosaic of discrimination" out of pieces of circumstantial evidence (Troupe v. May Dep't Stores Co., 20 F.3d 734, 737 (7th Cir. 2004)) and (2) the indirect approach, which employs the sequential burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[4]

*Direct Approach*

Sambrano primarily advances the direct approach to proving discrimination. Because there is no direct evidence of Navy's discriminatory animus, Sambrano can adduce only circumstantial evidence to suggest discrimination.[5] For that purpose he points to a variety of potential factors that he characterizes this way:

---

[4] Those approaches reflect well-established Title VII law. Because neither Sambrano nor Mabus has mentioned ADEA since their initial filings, this Court will follow their lead and analyze Sambrano's claims only under Title VII.

[5] Such circumstantial evidence may include for example suspicious timing, ambiguously discriminatory statements, preferential behavior toward other employees, evidence that similarly situated non-protected employees were treated more favorably or evidence of pretext (Troupe, 20 F.3d at 736-37).

5

his history of not being promoted from his GS-11 position while performing the work of a GS-12 employee, the presence of similarly situated non-protected employees who were treated more favorably than he was and the pretextual reasons for his non-promotion.[6]  This opinion will address each in turn.

First, Sambrano contends that he "was held to a GS-11 position 24 years without promotion" and that his position has been "misaligned and misclassified" during those 24 years (S. Mem. 14).  But there are some obvious flaws in that contention.

To begin with, employees are not entitled to promotions on the basis of longevity alone, and the failure of an employer to promote an employee cannot by itself be taken seriously as evidence of discrimination.  As for the other contention, although Navy sent a July 22, 2010 memorandum to Sambrano stating that because of accretion of his duties his position description

---

[6] In a separate section from the rest of the legal analysis in his memorandum, Sambrano argues that Gomes was not appropriately designated the selecting official for the job vacancy (S. Mem. 3-4).  But he makes no attempt to explain the legal significance of that assertion.  Even if it were assumed arguendo that Gomes operated improperly as the selecting official for the job vacancy, that would not of itself suggest discriminatory animus as opposed to some other administrative issue.  But any such assumption would be ill-founded, for the very regulation that Sambrano cites in support of his argument says "the selecting official may delegate the authority of those positions at his/her discretion" as long as "the selecting official [is] senior in the organizational chain of command to the position being filled" (M. St. Ex. J §4(f)).  Here Pye was named the selecting official and then delegated that role to Gomes for a position below Gomes' rank (id. Ex. 5 ¶3).

6

was determined to merit at GS-12 rating under the relevant standards (S. St. Ex. 11),[7] and although the reclassification was confirmed in an August 4, 2010 memo (S. St. Ex. 12), again that does not call for a finding of discrimination. Reclassification stemming from increased duties does not equate to the pejorative label "misclassification," and Sambrano provides no evidence of how long his position was assertedly misclassified or who was responsible.[8] Thus the mere fact that Sambrano was not promoted from a GS-11 position until 2010 does not provide the requisite circumstantial evidence of discrimination.

Sambrano also argues that similarly situated non-protected employees were treated more favorably than he was. Courts look at "all relevant factors" in determining whether employees are similarly situated (Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000)). Though the caselaw frequently speaks of whether the employees shared the same supervisor and performance standards and whether they engaged in similar conduct (Peirick v.

---

[7] Sambrano accepted increased duties in exchange for being reclassified GS-12 (id.).

[8] It should be kept in mind in any event that any such conduct, as well as any suggested failure to promote, that wa alleged to have taken place more than 300 days before Sambrano filed his claim with EEOC is not itself actionable (42 U.S.C. §2000e-5(e)). Though such time-barred conduct might theoretically serve to support an inference of discriminatory intent in the failure to promote during the 300-day period, Sambrano's failure to provide any basis for such a link deprives the argument of any force.

7

Ind. Univ.-Purdue Univ. Indianapolis Athletic Dep't, 510 F.3d 681, 688 (7th Cir. 2007)), such factors "should not be applied mechanically or inflexibly" (Hull v. Stoughton Trailers, LLC, 445 F.3d 949, 952 (7th Cir. 2006)).

Sambrano identifies six possible comparators: Joseph Dahlstrom, Kevin Harold, Jerry Cincula, Aaron Shroeder, Pravin Patel and Scott Kreissler ("Kreissler"). According to Sambrano, "[a]ll these white engineers are similarly situated" and were "treated differently" (S. Mem. 16). But he does not spell out such differential treatment other than to point out that those employees achieved GS-12 status while Sambrano held only GS-11 status.

Importantly in light of the single action at issue in this case--the 2006 cancellation of the GS-12 position for which Sambrano had been the putative top candidate--nothing even suggests that the claimed differential treatment had any relationship at all to the specific job vacancy in question here (Sambrano does not contend that any of the asserted comparators applied for that job[9]). Once again Sambrano points to a non-probative general failure to promote him to the GS-12 level.

In addition to that timing issue, Sambrano's effort to stake

---

[9] By definition, the fact that the job was cancelled means that Navy did not hire someone outside the protected group for the job. Simply put, Sambrano cannot create an inference of discrimination based on his failure to receive that specific promotion.

out a claim in terms of the treatment of comparators requires much more evidence than his brief recital of the comparators' basic characteristics (type of engineer, age, race, national origin, division) (S. Mem. 15). Sambrano fails to explain how those employees had comparable qualifications, conduct or performance. Instead, Sambrano casts aspersions[10] and suggests conspiracy theories[11] rather than tendering really relevant

---

[10] Sambrano points out that the purported comparators were GS-12 employees and unlicensed, while Sambrano was a GS-11 and licensed (S. Mem. 16-17). In that regard Sambrano attempts to cast aspersions on Navy's motives by pointing to a Navy policy that he claims states "[a]ll individuals in engineering and architectural positions at Pay Band GS-12/13 levels in the 08xx series, must be professionally licensed" (S. Mem. 17). But that is not the policy--instead it reads (S. St. Ex. 13, emphasis in original):

> All individuals in engineering and architectural positions at the Pay Band 3/GS-14, and <u>supervisors</u> at Pay Band 2/GS-12/13 levels in the 08XX series, must be professionally licensed.

That misstatement by Sambrano's counsel is disturbing, especially because there is no evidence that any of the comparators he mentions are supervisors. And counsel compounds that distortion of the issue by asserting that Sambrano "has a right of promotion to GS-12 for being a licensed engineer" (S. Mem. 17). Sambrano is not entitled to a promotion simply because he believes he is more qualified for a GS-12 position than those who already hold such a position. In fact, Sambrano does not bother to cite to any part of the record in reciting the characteristics of the comparators (S. Mem. 15). This is not a lone oversight, for Sambrano's brief rarely cites to the record and regularly cites cases and regulations improperly.

[11] Sambrano suggests that "Gomes canceled the vacancy on the GS-12 position and gifted it to Scott Kreissler" (S. Mem. 16) and claims that "[t]o make it appear that the cancellation was legitimate and non-discriminatory, no one of the candidates was selected" (<u>id</u>. 16). Sambrano further contends that Kreissler's

9

evidence that he was treated differently than similarly situated non-protected employees.

Last among the pieces of circumstantial evidence through which Sambrano attempts to show discrimination are the supposedly pretextual reasons for Navy's cancellation of the job vacancy. McCoy v. WGN Cont'l Broad. Co., 957 F.2d 368, 372 (7th Cir. 1992)(internal quotation marks and citations omitted) sets out Sambrano's burden on that score:

> To establish pretext, an employee must ultimately show by a preponderance of the evidence either (1) that the employer was more likely motivated by a discriminatory reason, or (2) that the employer's proffered reason is unworthy of credence. Where, as here, the plaintiff attempts to show the employer's proffered rationale is incredible, he need not present any direct evidence of discrimination. As this court has explained, a plaintiff may simply attack the credibility of the employer's proffered reason for termination....

And our Court of Appeals has repeatedly stressed that a showing of pretext requires the plaintiff to do more than merely demonstrate that the employer made a mistake in judgment or evaluation--instead it must be shown that the employer acted dishonestly or proffered a phony reason for its action (Jordan v.

---

promotion was in violation of Federal Regulations that state all federal employees must serve 52 weeks at the lower grade level before they are eligible for promotion (S. Mem. 16, citing 5 C.F.R. §300.604 (2010)). But Sambrano cites no evidence that Kreissler was actually promoted more quickly than federal regulations allow, nor does he explain how Kreissler's status as an intern interacts with those regulations. Most importantly, though, all of that is really a red herring laid across the spoor of the cancellation of a GS-12 potential vacancy that is in issue here.

10

Summers, 205 F.3d 337, 343 (7th Cir. 2000) is typical of the numerous cases so holding).

Navy proffers three reasons for its cancellation of the job vacancy: (1) concern over irregularities in the recruitment process; (2) the uncertainty introduced by the BRAC realignment process; and (3) decreased funding and workload concerns (M. Mem. 13). Sambrano tries to attack each of those reasons as pretextual, but on analysis he fails at every step.

Sambrano begins by suggesting that the claim of irregularities in the interview process is impermissibly vague (S. Mem. 6). While Gomes' statements alone are conclusory in nature ("I reviewed the report from the selection board and discovered some abnormalities" (M. St. Ex. G at Q. 10)), the rest of the record discloses the relevant irregularities. In particular, as already stated, the board disregarded one interviewer's ratings because that interviewer was unable to participate in one of the interviews, and Sambrano was recommended by the board after receiving the second highest raw scores (M. St. ¶¶19-21).

Sambrano contends that the board took appropriate action[12]

---

[12] Sambrano rightly points out that in making its decision to disregard the scores, the board consulted relevant Navy legal officers and management officials (M. St. Ex. D ¶6). But of course the fact that the officials believed that the fairest way to proceed was to omit the scores does not negate the irregularity of so acting at variance with the prescribed protocol.

11

in disregarding the interviewer's scores and recommending Sambrano's promotion.[13] But Gomes was the person charged with making the hiring decision, and there is no evidence at all to suggest that she was lying when she said she believed that the irregularities in the interviewing process merited cancellation of the position. Nor does the fact that Gomes' decision was subjective render the decision automatically suspect (<u>Poer v. Astrue</u>, 606 F.3d 433, 441 (7th Cir. 2010)).

Sambrano also ascribes pretextuality to Gomes' statements that she cancelled the job vacancy because of a possible decrease in workload as a result of the BRAC realignment and lack of funding for certain projects. First Sambrano argues that the BRAC realignment was going to result in an increase, not a decrease, in work (S. Mem. 5). Sambrano points to the statement by interview board chairman Kang in his memorandum, written at the completion of the interview process, that "looking at our future workload and our plan to staff up to accommodate MCON, MCNR projects in FY 07/08, we will need to select two candidates from the list to meet the demand of increased workload" (M. St.

---

[13] Sambrano continues to speculate about various possible conspiracies. Thus he suggests that because Gomes consulted with certain individuals such as her mentor Jennison, and not her direct supervisor Commander Beth Hartmann, Gomes must have had some nefarious motive for cancelling the position (S. Mem. 7). Without more, any suggestion of discrimination based on Gomes' decision to consult with her mentor is sheer (and impermissible) speculation.

12

Ex. D 357). But that does not do the job for Sambrano for two reasons.

First, it does not bear on the bona fides of the opinion or belief of final decisionmaker Gomes. Kang and Gomes may well have reasonably disagreed about the existence of an increase in workload, and Sambrano provides no corroborating objective evidence of such an increase. Second, Kang's memorandum is dated December 12, 2005, two months before Hemstreet's memorandum informing Kang and others of the closing of the SouthDIV base. But it will be remembered that Gomes was the base's BRAC officer--not only was she likely informed before others of the relevant details, but more significantly she was better situated to understand the possible consequences of the realignment.

Sambrano also points out the anticipation by others, including Hemstreet, that the result of the realignment would be "to add 35-40 billets over the next 12-19 months" (S. Mem. 6). Gomes knew that too, but she also knew that the added billets would likely not be of the same type as the posted vacancy and in many cases would need to be offered first to engineers from SouthDIV (M. St. Ex. G Q. 13). Sambrano provides no evidence to suggest that Gomes did not have an honest basis for her belief and the consequent cancellation of the job vacancy.[14]

---

[14] Sambrano does provide 20 different job announcements that were posted by NAVFAC-Midwest from June 5, 2006 to April 2007 (S. St. Ex. 3). Those postings are for all manner of positions, but

13

In all events, none of those arguments about the BRAC realignment has any impact on the bona fides of Gomes' assertion that one of the reasons she canceled the job vacancy was her concern over the cancellation of customer funding for several large paving projects (M. St. Ex. P ¶3).[15]  Instead Sambrano's assertions on the pretext issue essentially question the Navy's business judgment--an effort totally at odds with the courts' role in making that inquiry (<u>Ritter v. Hill 'N Dale Farm, Inc.</u>, 231 F.3d 1039, 1044 (7th Cir. 2000)).

While Navy need provide only one legitimate reason for cancelling the vacancy, so long as it is neither overly intertwined with nonlegitimate grounds nor coupled with overly fishy and suspicious other grounds (<u>Fischer v. Avanade, Inc.</u>, 519

---

not for the type of position at issue here.  Moreover, such other postings indicate nothing about the honesty of Gomes' relevant belief four months before their posting.

[15] In that section of his memorandum, Sambrano reasserts the evidence of the Navy's desire to add a number of billets in the aftermath of the BRAC realignment.  But that is not persuasive for the reasons already discussed, nor does it directly address Gomes' belief about the likely decrease in workload as a result of customer cancellations.  Sambrano also spills considerable ink discussing Navy's formal structure (S. Mem. 9).  That discussion is perplexing and seems to amount to an argument that (1) the original GS-12 position was listed as part of the NV25 organization and (2) because BRAC is not such a listed organization, the position was inappropriately cancelled on account of the BRAC process.  Not only is that contention irrelevant to the customer funding issue--it is nonsensical to boot.  As Sambrano himself admits, "BRAC is not included in these 22 organizations" (S. Mem. 9).  That is so because BRAC is a process that affects various parts of Navy, not a part of the organization itself.

F.3d 393, 403-04 (7th Cir. 2008)), this Court finds that the total picture refutes any notion of "phony reasons" for Navy's decision. In sum, Sambrano has not provided the circumstantial evidence he would need to create a material factual issue as to discrimination via the direct approach.

*Indirect Approach*

Nor does Sambrano fare any better under the indirect approach to establishing discrimination. To that end he must follow the McDonnell Douglas path that begins with the oft-repeated four-factor prima facie case as set out in Gusewelle v. City of Wood River, 374 F.3d 569, 574 (7th Cir. 2004):

> To do this, a plaintiff must show: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) a similarly situated employee not of the protected class was treated more favorably.

If Sambrano can meet that test, Navy must proffer a legitimate nondiscriminatory reason for its conduct (id.; McDonnell Douglas, 411 U.S. at 802). And if that is done, Sambrano must establish that the reason was a pretext for discrimination (id. at 804).

In light of the earlier discussion, there is no need to dance all the steps in the McDonnell-Douglas quadrille, for that procedure's shifts in the burdens of production always leave

15

Sambrano with the burden of persuasion.[16] In that respect this case can be handled by turning directly to the subject of pretext once again--an approach amply supported by the caselaw (see, e.g., Olsen v. Marshall & Ilsley Corp., 267 F.3d 597, 600-01 (7th Cir. 2001)). And so Sambrano loses for the same reasons that were set out in the preceding section.[17]

### Retaliation

Although Sambrano has thus succumbed on his employment discrimination claim, he could still survive summary judgment if he were able to show that Navy retaliated against him for filing a charge of employment discrimination with EEOC. Kampmier v. Emeritus Corp., 472 F.3d 930, 939 (7th Cir. 2007)(Supreme Court citation omitted) summarized the basics of a retaliation claim:

> Under Title VII, unlawful retaliation occurs when an employer takes actions that "discriminate against" an employee because she has opposed a practice that Title VII forbids.... A plaintiff has two means of proving Title VII retaliation: the direct method and the indirect method.

As Humphries v. CBOCS West, Inc., 474 F.3d 387, 404 (7th Cir. 2007)(citations and internal quotation marks omitted) then amplified:

---

[16] As n.1 reflects, meeting the "burden of persuasion" in opposition to a Rule 56 motion requires only the demonstration of a genuine issue of material fact.

[17] Indeed, the record would support cutting Sambrano off at the pass even earlier--remember that he has failed to provide evidence that a similarly situated individual of non-protected class was treated more favorably, so that he would fall at the threshold prima-facie-case hurdle.

> Under the direct method, [plaintiff] must present
> direct evidence of (1) a statutorily protected
> activity; (2) a materially adverse action taken by the
> employer; and (3) a causal connection between the two.
> Under the indirect method, he must show that after
> opposing the employer's discriminatory practice only
> he, and not any similarly situated employee who did not
> complain of discrimination, was subjected to a
> materially adverse action even though he was performing
> his job in a satisfactory manner. Thus, the indirect
> method of establishing a prima facie case requires
> proof both of similarly situated employees and of the
> plaintiff's performing his job satisfactorily.

Here Sambrano follows only the first method: He claims he was retaliated against when Jennison directed Kang to assign him GS-11 work and when Gomes consulted with Jennison before she acted to cancel the vacancy. Jennison supposedly retaliated because of a 1997 dispute that occurred when he was Sambrano's supervisor and Sambrano filed a worker's compensation claim (S. Mem. 20). But even if that notion had been properly advanced (as it has not been),[18] Sambrano flunks on the Humphries-announced elements.

As for the necessary "materially adverse action taken by the employer," Jennison's asserted direction to Kang would be time-barred in any event, because Kang had not been Sambrano's supervisor for a number of years when the latter's relevant EEOC claim was filed (M. St. Ex. N 14-16). And as for Gomes'

---

[18] Sambrano makes no attempt to cite to the record in discussing that asserted incident, an unsurprising development given that he did not include any reference to such an incident in his LR 56.1 submissions.

cancellation of the vacancy and consequent failure to promote Sambrano, that is of course a materially adverse action--but it fails the direct evidence test in terms of any causal connection to the original EEOC claim. Sambrano himself concedes that the temporal gap between his 2000 EEOC charge and the 2006 cancellation of the job vacancy provides no causal link, even inferentially (S. Mem. 20).

What Sambrano urges instead is that Jennison played a vital role in Gomes' decision to cancel the vacancy (id.). Our Court of Appeals has recently reconfirmed its view "that the retaliatory motive of a nondecisionmaker may be imputed to the company where the nondecisionmaker influenced the employment decision by concealing relevant information from, or feeding false information to, the ultimate decisionmaker" (Poer, 606 F.3d at 440)(internal quotation marks omitted)).[19] But in that respect Sambrano offers nothing more than a mentor/protege relationship between Jennison and Gomes (S. Mem. 20).

That contention is so tenuous and so speculative as barely to require rebuttal. But even worse for Sambrano, there is actually evidence that Jennison did <u>not</u> in fact influence Gomes

---

[19] That may or may not be the precise standard, for the Supreme Court now has that subject before it in a case taken on certiorari to the Seventh Circuit (Staub v. Proctor Hosp., 560 F.3d 647 (7th Cir. 2010), cert. granted No. 09-400, 130 S.Ct. 2089 (2010)). But as the ensuing text reflects, Sambrano fails under any conceivable version of the standard.

decision. Gomes recalled Jennison having mentioned the previous EEOC charge to her in 2003 and telling her that the details were confidential (M. St. Ex. G, Q.& A. 8). There is no indication whatever that the conversation led to Gomes' much later cancellation of the vacancy or that Jennison acted at any time in a way that would have significantly influenced Gomes' decision to cancel the vacancy. So Sambrano's retaliation claim must fail as well.

## Conclusion

With no genuine issue of material fact having been identified, Mabus is entitled to judgment as a matter of law on all of Sambrano's claims. Navy's Rule 56 motion is granted, and this action is dismissed with prejudice.

_____
Milton I. Shadur
Senior United States District Judge

Date: December 8, 2010